UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAURICE SNOWDEN,<br>    Plaintiff, | :<br>:<br>: | CASE NO. 3:23-cv-1204 (MPS) |
| v. | :<br>:<br>: | |
| DOE, et al.,<br>    Defendants. | :<br>:<br>:<br>: | JANUARY 18, 2024 |

## INITIAL REVIEW ORDER

Plaintiff Maurice Snowden, incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed an amended complaint in accordance with the Court's September 29, 2023 Order. The amended complaint names the Connecticut Department of Correction, Warden Bowles, Deputy Warden Baymon, Captain Blackstock, Lieutenant Monette, Officer Carasquillo, and Nurse Butler as defendants. All of the individual defendants are described as working at the now-closed Northern Correctional Institution. The plaintiff does not specify what legal claims he asserts against the defendants and seeks no relief. As the plaintiff sought only damages in the original complaint, the Court assumes that he seeks damages in the amended complaint as well.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless of whether the

prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

I. **Allegations**

While the Court does not set forth all of the facts alleged in the plaintiff's amended complaint (ECF No. 12), it summarizes his basic factual allegations here to give context to the ruling herein. Prior to the incident that is the subject of this action, the plaintiff and Officer Carasquillo engaged in a verbal altercation after the plaintiff told Officer Carasquillo to stop verbally abusing an inmate who had been convicted of rape. *Id*. ¶¶ 1-2. Officer Carasquillo told the plaintiff, "I have something for you." *Id*. ¶ 2. Later that day, Officer Carasquillo began falsely stating on the tier that the plaintiff had been convicted of rape. *Id*. ¶ 3.

The plaintiff began writing "up the chain of command" and speaking with Captain Blackstock, Deputy Warden Baymon, and Warden Bowles when they toured his housing unit. The plaintiff complained that Officer Carasquillo's comments had put his life in danger, said that he feared for his safety when Officer Carasquillo was around, and asked that Officer Carasquillo be reassigned to another unit. *Id*. ¶¶ 4-6. Captain Blackstock told the plaintiff that he would be fine as he was in his cell, *id*. ¶ 4, Deputy Warden Baymon said that he would speak to the officer, *id*. ¶ 5, and, in response to his request to have Officer Carasquillo removed, Warden Bowles told the plaintiff "that's not how it works," *id*. ¶ 6.

2

On September 23, 2020, Officer Carasquillo came to the plaintiff's cell door and said that he wanted to shake down the plaintiff's cell. *Id*. ¶ 8. When the plaintiff turned around to place his hands through the open trap in the door to be handcuffed, the door opened and Officer Carasquillo entered the cell. *Id*. ¶ 9. He pushed the plaintiff to the back of the cell and began to "slam" the plaintiff around the cell, punching him, and kicking him in the back. *Id*. The plaintiff lost consciousness while lying face-down on the floor and being punched by Officer Carasquillo. *Id*. ¶ 10. When he regained consciousness, his face was burning from chemical agent used by Lieutenant Monette. *Id*. The plaintiff contends that use of the chemical agent was unnecessary as he was not resisting. *Id*.

The plaintiff was taken to the medical unit where his eyes were flushed and he was checked for injuries. *Id*. ¶ 11. He had an open wound on his forehead. *Id*. The plaintiff asked Nurse Butler to send him to an outside hospital because he thought he had a concussion. *Id*. ¶ 12. She ignored his request and merely stated that he would be fine. *Id*.

The plaintiff was then placed on in-cell restraints. *Id*. The plaintiff believes that Lieutenant Monette ordered the placement as retaliation. *Id*. ¶ 13. The plaintiff remained awake all night and asked every officer who passed his cell to ask the medical unit to send him to an outside hospital. *Id*.

The plaintiff was not given a full decontamination procedure, *i.e.*, a shower, even though he was compliant at all times. *Id*. ¶ 14. The plaintiff believes that this was to cause him additional pain and burning from the chemical agent. *Id*.

The plaintiff was provided "extremely small (1X) clothing (shirt, boxers and jumpsuit." *Id*. ¶ 15. His cell was covered with human waste and he was provided only "small sheets and

blankets." *Id*. ¶ 16.

After he was released from in-cell restraints, Dr. Wright saw the plaintiff in the medical unit for testing. *Id*. ¶ 17. When the plaintiff complained of head injuries, Dr. Wright sent him to an outside hospital. *Id*. Dr. Wright said that, following a head injury, an inmate always should be sent to an outside hospital. *Id*.

## II. Discussion

The Court assumes that the plaintiff is asserting claims for use of excessive force against Officer Carasquillo and Lieutenant Monette, deliberate indifference to safety against Captain Blackstock, Deputy Warden Baymon, and Warden Bowles, deliberate indifference to serious medical needs against Nurse Butler, and unconstitutional conditions of confinement against Lieutenant Monette.

Information on the Department of Correction website shows that the plaintiff was sentenced on January 27, 2014 to a term of imprisonment of sixty years and six months. *See* www.ctimnateinfo.state.ct.us/detailsupv.asp?id_inmt_num=332736. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). Thus, as the plaintiff was a sentenced inmate at the time of the incident underlying this action, his claims are cognizable under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are brought under the Eighth Amendment while claims of pretrial detainees are brought under the Fourteenth Amendment).

### A. Department of Correction

4

Although he does not include the Department of Correction as a defendant within the body of the amended complaint, the plaintiff lists the Department of Correction in the case caption. The Department of Correction is a state agency. *See* www.portal.ct.gov/DOC. As a state agency, the Department of Correction is not subject to suit under section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 66 (1989) (state and state agencies not persons within the meaning of section 1983); *Bhatia v. Connecticut Dep't of Children & Families*, 317 F. App'x 51, 52 (2d Cir. 2009) (same). Accordingly, if the plaintiff intended the Department of Correction to be a defendant in this case, all claims against the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Use of Excessive Force

To state a claim for use of excessive force in violation of the Eighth Amendment, the plaintiff must allege facts establishing subjective and objective components. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The objective component focuses on the harm done to the inmate in light of contemporary standards of decency. The amount of harm required depends on the nature of the claim. *Id.* at 21. Although some degree of injury is usually required, the prisoner need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.") (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9). The subjective component of the excessive force standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather

5

than as a part of a 'good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9).

The extent of an inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Hudson*, 503 U.S. at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any effort made to temper the severity of a forceful response." *Id.* (internal quotation marks and citation omitted).

The plaintiff alleges that Officer Carasquillo was angry at him because the plaintiff had told Officer Carasquillo not to verbally abuse another inmate. He further alleges that he was not resisting at any time during the use of force. In addition, Lieutenant Monette sprayed him with a chemical agent while he was unconscious. Based on these allegations there does not appear to have been any need for the use of force or any threat posed by the plaintiff. Instead, the use of force is alleged to have been a malicious reaction to earlier statements made by the plaintiff. The claims for use of excessive force will proceed against Officer Carasquillo and Lieutenant Monette.

### C. Deliberate Indifference to Safety

The plaintiff contends that defendants Blackstock, Baymon, and Bowles were deliberately indifferent to his safety by failing to take action in response to his complaints about Officer Carasquillo. To state an Eighth Amendment claim for deliberate indifference to safety or failure to protect from harm, the plaintiff must show that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a

substantial risk of serious harm and failed to take reasonable actions to abate or avert the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996)). There is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *See Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The defendant's actions must be more than merely negligent. The prison officials must have acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

For purposes of initial review, the amended complaint adequately states claims for deliberate indifference to safety. The plaintiff alleges that he reported the incident with Officer Carasquillo and the officer's threat to each defendant along with the plaintiff's fears for his safety, but none of the three defendants did anything. The plaintiff and Officer Carasquillo both remained in the unit and the plaintiff was assaulted by defendant Carasquillo. Although the Court cannot determine based on the current record exactly how the plaintiff expressed his concerns and whether defendants Blackstock, Baymon, or Bowles appreciated the risk to the plaintiff's safety, those questions are better left to be resolved in the adversary process. The claims against Captain Blackstock, Deputy Warden Baymon, and Warden Bowles for failure to protect from harm will proceed for further development of the record.

### D. Deliberate Indifference to Medical Needs

To state a cognizable claim for deliberate indifference to serious medical needs, the plaintiff must allege facts showing that his medical need was "sufficiently serious." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The plaintiff also must show that the defendant was deliberately indifferent to his serious medical needs. "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014)

("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)).  Thus, "mere negligence" is insufficient to state a claim for deliberate indifference.  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

The plaintiff alleges that he lost consciousness and had an open wound on his forehead.  He further alleges that Doctor Wright told him that any head injury required transport to an outside hospital.  Nurse Butler, however, allegedly provided no medical attention after the use of force and dismissed his concerns regarding a possible concussion.  Based on these allegations, the Court will permit the deliberate indifference to medical needs claim to proceed against Nurse Butler for further development of the record.

### E.  Conditions of Confinement

Finally, the plaintiff alleges that Lieutenant Monette placed him on in-cell restraints with clothing that was too small and in a cell covered in human waste.[1]

To state a plausible Eighth Amendment claim for unconstitutional conditions of confinement, the plaintiff must allege facts showing an objective element, that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities," and a subjective element, that the defendants "acted with a sufficiently culpable state of mind, such

---

[1] The plaintiff alleges that he "believe[s] Lieutenant Monette did this out of retaliation because could of left me in the cell without restraints."  Doc. No. 1 ¶ 13.  The mere mention of a claim or constitutional provision, however, is not sufficient to state a claim for relief under that theory.  As the plaintiff alleges no facts supporting a retaliation claim against Lieutenant Monette, the Court considers this claim only as an Eighth Amendment claim for unconstitutional conditions of confinement.

as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). The plaintiff must allege facts showing that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference." *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002).

Objectively, the seriousness of a violation is determined based on contemporary standards of decency. *See Walker*, 717 F.3d at 125. The inquiry focuses on the "severity and duration" of the conditions, not any "resulting injury." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). "[U]nsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker*, 717 F.3d at 127 (holding that allegation of exposure "to human excrement and bodily fluids in a poorly ventilated cell over the course of multiple days" sufficiently alleged objective component of conditions of confinement claim). The Supreme Court has affirmed a Court of Appeals finding that an inmate stated an Eighth Amendment claim by alleging that "for six full days ... [he was confined] in a pair of shockingly unsanitary cells" the first of which "was covered nearly floor to ceiling in 'massive amounts' of feces" and the second of which was "frigidly cold" and "equipped with only a clogged floor drain to dispose of bodily wastes." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam); *see also Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001) (vacating summary judgment as to Eighth Amendment claim where plaintiff asserted, *inter alia*, that "for several consecutive days ... his cell was filled with human

10

feces, urine and sewage water"). However, "where exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions. 'The Eighth Amendment is generally not violated ... where unsanitary conditions are temporary.' ... Judges in this district have repeatedly declined to fine that sporadic or brief exposures to waste represented cruel and unusual punishment." *Ortiz v. Department of Corr.*, No. 08 Civ. 2195(RJS/HBP), 2011 WL 2638137, at *7, 9 (S.D.N.Y. Apr. 29, 2011), *report & rec. adopted sub nom. Ortiz v. Hernandez*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

The plaintiff does not indicate how long his was held on in-cell restraints in the unsanitary cell. Thus, the Court will permit this claim to proceed against Lieutenant Monette for further development of the record.

### III. Conclusion

Any claim against the Department of Correction is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed against the remaining defendants in their individual capacities as set forth above.

The Court enters the following additional orders.

(1) **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendants Carasquillo, Monette, Blackstock, Baymon, Bowles, and Butler, mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-

person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2) **The Clerk shall** send the plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If

the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 18th day of January 2024 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge